UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DELORES FORD, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 17-2525 (ABJ) |
| STATE OF MARYLAND ATTORNEY GENERAL, *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiffs are residents of the Riggs Park community located in northeast Washington, D.C. who, proceeding *pro se*, have filed a complaint against the State of Maryland Attorney General, the Maryland Department of the Environment, and Chevron U.S.A., Inc., that includes multiple state and federal claims, including nuisance, trespass, intentional infliction of emotional distress, fraudulent concealment, discrimination, and conspiracy, among others. The action arises out of a gas leak that occurred almost 30 years ago at a Chevron gas station in Chillum, Maryland, just north of the Riggs Park neighborhood. Plaintiffs allege that as a result of the gas leak, toxic chemicals migrated through the soil to their properties, adversely affecting their property values and their health.

All the defendants have filed motions to dismiss. Because plaintiffs' claims are barred by the doctrine of *res judicata*, and they fall well outside the applicable statute of limitations, the Court will grant defendants' motions.

# BACKGROUND

According to the complaint, on October 2, 1989, "a Chevron employee reported to Chevron that a car . . . collided into a pump dispenser" at a service station located in Chillum, Maryland. Compl. [Dkt. # 1] ¶ 66, 69. After this collision, a contractor was brought in to repair the damage. *Id*. ¶ 69. He reported to the Maryland Department of the Environment that there was an underground release of petroleum products. *Id*. Later that month, Chevron hired Hunter Services, an engineering and environmental firm, to "conduct a preliminary environmental assessment" of the release. *Id.* ¶ 70. Hunter Services issued a report on February 23, 1990, noting that plaintiffs' properties, which were located just south of the station, were "sensitive receptors" of the gas release. *Id*.

Plaintiffs allege that Chevron did not undertake to investigate how the Riggs Park population would be affected by the release of hazardous chemicals into the soil near their properties. Compl. ¶ 76. In March 1991, Chevron installed off-site monitoring wells east of the station in Maryland, but it did not install wells in the Riggs Park neighborhood. *Id*. ¶ 77. On a quarterly basis since 1993, samples have been collected from these wells and analyzed for chemicals such as "BTEX," "MTBE," and "Halogenated Aliphatic Hydrocarbons." *Id.* ¶¶ 78–79, 82, 84, 86, 89. These samples showed that additional petroleum releases occurred in 1994, 1995, 1996, 1997, and 2000, although plaintiffs were notified only after the last release in 2000. *Id*. ¶¶ 78–90.

Sometime in August 2000, the Chevron gas station shut down overnight and residents of Riggs Park notified the State of Maryland, who sent an inspector to the site. Compl. ¶ 91. The inspector found that gasoline had filled an entire monitoring well, and he stated that he would notify Chevron and the District of Columbia that a release had occurred. *Id*. Chevron then

notified residents of Riggs Park that "Chevron would be having a community meeting" regarding the releases. *Id*. ¶ 92.

Sometime between 2008 and 2009, "[p]laintiffs, in an effort to establish damages caused by Defendants . . . paid to have properties appraised to establish [whether] the values on their properties were negatively affected by the actions of the Defendants." Compl. ¶ 24. The appraisals showed that their property values had decreased, and as a result, plaintiffs appealed their property taxes to a D.C. authority and were awarded a reduction in taxes. *Id.* In addition, in 2008, a "District of Columbia sponsored sampling event identified 45 homes of the 106 sampled needed VMS [vapor mitigation system] installations." *Id*. ¶ 121.

Plaintiffs allege that Chevron intentionally contaminated "[p]laintiffs' personal and real property" thereby lowering their property values and exposing plaintiffs to toxic chemicals. Compl. ¶¶ 8, 10. Plaintiffs further allege that the State of Maryland and its Department of the Environment aided and abetted Chevron's torts and conspired with Chevron to fail to notify the residents of Riggs Park of the releases, causing plaintiffs additional "financial, mental and medical hardship and losses in years to come." *Id*. ¶ 18.

On April 4, 2017, 35 individuals filed a complaint in the Superior Court of the District of Columbia against the State of Maryland, the Maryland Department of the Environment, and Chevron U.S.A., Inc. *See* Ex. B, Chevron's Mot. to Dismiss [Dkt. # 7-3] ("Chevron's Mot.") at 13. They asserted the following claims against all defendants: (1) vicarious liability through civil conspiracy under 18 U.S.C. § 241, (2) continuing trespass, (3) nuisance, (4) duty to disclose, (5) intentional nuisance (strict liability), (6) neglect to prevent interference with civil rights under 42 U.S.C. § 1986, (7) intentional infliction of emotional distress, (8) disparate

impact discrimination under Title VII, (9) failure to warn/fraudulent concealment, (10) medical monitoring, and (11) violations of 42 U.S.C. § 1983. *Id.* at 40–54.

On July 25, 2017, the Superior Court dismissed plaintiffs' claims against the Maryland defendants, finding that it did not have personal jurisdiction, and the claims were time-barred. On November 7, 2017, the Superior Court granted Chevron's motion to dismiss, again finding that the claims were barred by the applicable statute of limitations. *Riggs Park Advocates for Envtl. Justice v. Maryland*, 2017 CA 2351 B (D.C. Super. Ct. Nov. 7, 2017).

Just a few weeks later, on November 22, 2017, plaintiffs filed an almost identical complaint in this Court, asserting the same eleven claims against the same defendants. All defendants have moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6). *See* Chevron's Mot.; Maryland's Mot. to Dismiss [Dkt. # 14, 15] ("Maryland's Mot.").

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

4

possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

A defendant may raise the affirmative defense of statute of limitations in a Rule 12(b)(6) motion to dismiss "when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996), citing *Richards v. Mileski,* 662 F.2d 65, 73 (D.C. Cir. 1981).

A defendant may also assert in a Rule 12(b)(6) motion to dismiss that a plaintiff's claim is barred by *res judicata*. *See Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76–77 (D.C. Cir. 1997). The Court may take judicial notice of public records from other proceedings in deciding whether a complaint asserts a claim barred by *res judicata*. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

**I.     The claims of the 26 repeat-plaintiffs are barred by the doctrine of *res judicata*.**

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Pursuant to 28 U.S.C. § 1783, "federal courts must give state court judgments the same preclusive effect as would be given by the courts of the state where the judgments emerged." *Smith v. District of Columbia*, 629 F. Supp. 2d 53, 57 (D.D.C. 2009), citing *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984). To determine the preclusive effect of a state court judgment, the Court examines "(1) whether D.C. law would give the judgment of the Superior Court preclusive effect, and (2) whether the Superior Court proceedings satisfy minimum due process requirements." *Id.* at 58, citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 n. 22 (1982).

Under D.C. law, a subsequent action will be precluded if three elements are satisfied: (1) the claim was adjudicated finally in the prior action; (2) the present claim is the same as the claim which was raised or which could have been raised in the prior proceeding; and (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case. *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008), citing *Patton v. Klein*, 746 A.2d 866, 870

(D.C. 1999). Under this three-factor test, the claims of the 26 individuals who were also parties to the D.C. Superior Court suit are barred by *res judicata*.[1]

First, the Superior Court's dismissal of plaintiffs' claims against all defendants on statute of limitations grounds serves as a final judgment on the merits.[2] *See* D.C. Super. Ct. R. 41(b); *Eastern Credit Ass'n, Inc. v. Braxton's Estate*, 215 A.2d 485, 486 (D.C. 1965). Second, plaintiffs' complaint here is almost identical to their complaint in the Superior Court action. Save for a few sentences and words here and there, plaintiffs have asserted the same eleven causes of action based on the same facts. Third, the repeat-plaintiffs have brought their claims against the same defendants or their privies: Chevron U.S.A., Inc., the State of Maryland Attorney General, and the Maryland Department of the Environment. In the previous action, the defendant named was State of Maryland as opposed to the State of Maryland Attorney General.

---

1 The repeat-plaintiffs are: Delores Ford, John R. Dunston, Linda Pulley, Charles and Jeannette Lanier, Bettye Tate, Emma Shepherd-Reid, Martha Young, Delroy Wright, Allan and Kathleen Lake, Deborah and Darrell Johnson, Carol Warren, Jonnita and Charlene Johnson, Glenn Jordan, Michelle Quander, Avis Henry, DeWanna Sang, Henry Kahangara, Monica Saleem, Saundra Durant, Roy Brinkley, Carolyn Lyles, and Gretchen Atkinson.

2 The D.C. Superior Court also dismissed the claims against the Maryland defendants for lack of personal jurisdiction. A dismissal for want of personal jurisdiction is not typically a judgment "on the merits" for the purposes of *res judicata* and would not preclude a second action on the same claim in a court that can establish personal jurisdiction. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 805 (1985); 18A Fed. Prac. & Proc. Juris. § 4436 (2d ed. 2018). However, the judgment ordering dismissal has preclusive effect as to matters actually adjudicated—for example, it will preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal, unless in the interim there are developments that tend to cure the jurisdictional deficiency. *GAF Corp. v. United States*, 818 F.2d 901, 912–13, n.72 (D.C. Cir. 1987), citing *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250 (10th Cir. 1978) (prior state court determination of lack of personal jurisdiction precludes relitigation of issue in subsequent federal litigation on same cause of action). Because this Court would apply the same law as applied in the Superior Court action to determine personal jurisdiction, and there have been no developments to cure the jurisdictional deficiency, this ruling can be given preclusive effect.

While it is not clear to the Court that plaintiffs intended to make a substitution,[3] the Court finds that these two defendants are in privity because the Maryland Attorney General is "so identified in interest with [the State of Maryland] that he represents precisely the same legal right in respect to the subject matter involved." *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963). Therefore, D.C. law would give the Superior Court's judgment preclusive effect.

Finally, the proceedings in Superior Court satisfy minimum due process requirements. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979). While plaintiffs assert, in various letters submitted to the Court, that they were given poor legal advice by their attorney in the prior action, they do not assert that they were denied fair state court procedures, and there is no reason to doubt the procedures afforded to plaintiffs in the Superior Court. *See* Ex. 5, Pls.' Opp. to Chevron's Mot. to Dismiss [Dkt. # 18] ("Pls.' Chevron Opp."); Pls.' Opp. to Maryland's Mot. to Dismiss [Dkt. # 20] ("Pls.' Maryland Opp.") at 2–3.

The 26 repeat-plaintiffs had the opportunity to litigate their claims fully and fairly against the defendants, and they may not relitigate those claims in another court. Therefore, the claims of the repeat-plaintiffs will be dismissed as barred by the doctrine of *res judicata*.

---

3  In the body of the instant complaint, plaintiffs do not refer at all to the Maryland Attorney General—rather, they assert that the State of Maryland is the defendant. *See, e.g.*, Compl. ¶ 8 ("Defendant State of Maryland"); ¶ 15 ("Chevron and State of Maryland conspired"); ¶ 18 ("The Defendant, State of Maryland, aided and abetted this joint tort."); ¶ 71 ("The State of Maryland knew or should have known . . ."). Furthermore, on the last page of plaintiffs' Superior Court complaint, the first defendant listed is "Attorney General, State of Maryland" although on the first page the defendant listed is the "State of Maryland."

## II. The claims of the remaining plaintiffs are time-barred.

The claims brought by individuals who did not sign on to the original suit fare no better, though, because like the Superior Court action, this case was filed long after the statute of limitations expired. The longest possible statute of limitations applicable in this case is five years: under D.C. Code § 301(10), actions for "the recovery of damages for an injury to real property from toxic substances" must be brought within five years "from the date the injury is discovered or with reasonable diligence should have been discovered." State law claims for "personal injury must be brought within three years of the time the action accrues." *See Bailey v. Greenberg*, 516 A.2d 934, 936 (D.C. 1986), citing D.C. Code § 12-301(8) (setting a statute of limitations of three years for all causes of action not "specifically prescribed" in other subsections). These provisions apply to the following counts: (1) vicarious liability through civil conspiracy,[4] (2) continuing trespass, (3) nuisance, (4) duty to disclose, (5) intentional nuisance (strict liability), (7) intentional infliction of emotional distress, (9) failure to warn/fraudulent concealment, and (10) medical monitoring.

---

4   Plaintiffs' first claim alleges vicarious liability through *civil* conspiracy, but it cites 18 U.S.C. § 241, the statute for federal *criminal* conspiracy. The cases plaintiffs rely upon in their complaint do not refer to this statute; they refer to the tort of civil conspiracy. Compl. ¶¶ 93–95. Because the criminal conspiracy statute does not confer a private cause of action, and it is evident that plaintiffs intended to claim civil conspiracy, the Court will treat this claim as a claim for the tort of civil conspiracy. Civil conspiracy is not a recognized independent tort in the District of Columbia—rather, it depends on performance of some underlying tortious act. *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000). "[A] civil conspiracy claim incorporates not only every substantive element of the underlying tort, but also its statute of limitations." *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009).

Further, plaintiffs' federal claims (counts 6, 8 and 11)[5] have a maximum statute of limitations of three years. *See* 42 U.S.C. § 1986 (count 6) ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."); *see Savage v. District of Columbia*, No. 02–7135, 2003 WL 843326, at *1 (D. C. Cir. Feb. 25, 2003) ("The district court properly applied a three-year statute of limitations in this case brought pursuant to 42 U.S.C. § 1983.") (count 11).

To determine whether these limitations periods have expired, the Court must determine when they started to run. "Generally, a cause of action is said to accrue at the time injury occurs." *Bussineau v. President & Dirs. of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986). "[W]here the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs, [courts] apply a 'discovery rule' to determine when the statute of limitations commences." *Id.* The discovery rule provides that the statute of limitations is tolled until the plaintiff "discovers or reasonably should have discovered her injury." *Byers v. Burleson*, 713 F.2d 856, 860 (D.C. Cir. 1983). "Under the discovery rule, a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Bradley v. Nat'l Ass'n of Secs. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849 (D.C. Cir. 2005)

---

5   Plaintiffs assert a disparate impact discrimination claim under Title VII in Count 8. Under Title VII, a complainant must first file a charge of discrimination with the Equal Employment Opportunity Commission, and once the agency has finished processing the charge, the complainant has 90 days from issuance of a "right to sue letter" to file in court. This "statute of limitations" is clearly inapplicable here, considering that plaintiffs have not asserted any employer-employee relationship. Therefore, any claim under Title VII can be dismissed pursuant to Rule 12(b)(6). Plaintiffs may have intended to assert a discrimination charge under Title VI, which prohibits discrimination in programs and activities receiving federal financial assistance. Claims brought under Title VI also have a statute of limitations of three years. *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 457 (D.D.C. 2014) (collecting cases).

According to their complaint, plaintiffs learned of their alleged injury and any alleged wrongdoing in 2000 and again in 2008. Compl. ¶ 89 ("Defendants, in 2000, did finally notify plaintiffs a release had occurred."); ¶ 121 ("[A] 2008 District of Columbia sponsored sampling event identified 45 homes of the 106 sampled needed VMS installations."). Between 2008 and 2009, plaintiffs obtained property appraisals to determine the extent of their "damages caused by the Defendants" and they sought reductions in their property taxes based upon their decreasing property values. *Id.* ¶ 24. Thus, the complaint reveals on its face that plaintiffs knew that they had suffered injury by, at the latest, 2009.[6] Applying the most generous statute of limitations— five years—plaintiffs had until 2014 to file their suit. This suit was filed on November 22, 2017—three years too late.

Plaintiffs do not dispute that they knew or should have known of their injuries, its cause, and some evidence of wrongdoing, at the latest by 2009. Instead, they assert that their claims are not barred by the applicable statute of limitations because of the continuing tort doctrine. For a claim to constitute a continuing tort, it must be "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact . . . that reveals its illegality." *Keohane v. United States,* 669 F.3d 325, 329 (D.C. Cir. 2012), quoting *Taylor v. FDIC,* 132 F.3d 753, 765 (D.C. Cir. 1997).

"The statute of limitations period for continuing torts begins to run once a plaintiff has inquiry notice of a potential cause of action." *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004); *see Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C.

---

6    It is unclear from the complaint on exactly what date plaintiffs ordered the appraisals or received the appraisal reports, but they state that this occurred between 2008 and 2009.

2002) ("When the plaintiff is or should be aware that he or she is being injured by a continuing tort, the statute of limitations begins to run.").[7] Once a plaintiff "has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *Beard*, 790 A.2d at 548; *see Lin v. United States*, 690 Fed. Appx. 7, 10 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 207, 199 L. Ed. 2d 118 (2017) ("Once a plaintiff is, or should be, aware of the injury, the rationale for the continuous tort doctrine is inapplicable and the statute of limitations begins to run.").

Again, at the very latest, plaintiffs were aware that they had grounds to seek recovery in 2009, when they obtained the appraisals of their property, became aware of the diminution in value, and appealed their property taxes (which resulted in D.C. reducing the assessed values of the properties and lowered plaintiffs' taxes).[8] Compl. ¶¶ 24, 89.

Plaintiffs argue that they continue to be affected by defendants' alleged actions and that should toll the statute of limitations. Pls.' Chevron Opp. at 4, 6–7; Pls.' Maryland Opp. at 4. While the effects may be ongoing, this "by itself it is not enough to delay the accrual of a . . .

---

[7] Plaintiffs argue that the statute of limitations period begins to run "until the tortious acts have ceased." Compl. ¶ 62. While this was once the law in D.C., *see Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984), more recent cases have rejected this "expansive application of the continuing tort doctrine." *Beard*, 790 A.2d at 548; *see e.g.*, *Jung*, 372 F.3d at 433.

[8] The *Beard* court found that even if the plaintiff had notice of the continuing tort and the statute of limitations has elapsed, "injuries attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought" are recoverable. *Beard*, 790 A.2d at 548, citing *John McShain, Inc. v. L'Enfant Plaza Props., Inc.*, 402 A.2d 1222, 1231 n.20 (D.C. 1979). But even if this can be characterized as a continuing tort, plaintiffs do not allege that defendants committed a tortious act within the five-year limitations period prior to the filing of the law suit. Plaintiffs allege various gas releases occurred up to the year 2000, but after that, plaintiffs do not allege any other actions taken by defendants. *See Lin*, 690 Fed. Appx. at 10 ("Therefore, even if they could prove a continuing tort, they could only recover for acts within the last three years. And plaintiffs have not alleged any injurious acts in that period.").

cause of action." *Beard*, 790 A.2d at 548; *Lin*, 690 Fed. Appx. at 9 (finding that a continuing tort is not created by the "lingering effect of an unlawful act nor a defendant's failure to right a past wrong").

Because plaintiffs filed this complaint well outside the applicable limitations period, it is time-barred and must be dismissed.[9]

## CONCLUSION

Therefore, the Court will grant defendants' motions to dismiss under Rule 12(b)(6) on the grounds that plaintiffs' claims are barred by the doctrine of *res judicata* as well as the applicable statute of limitations.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: October 22, 2018

---

9   Because the Court has grounds to dismiss plaintiffs' case based on the doctrine of *res judicata* and the applicable statute of limitations, it need not address defendants' other arguments based on Rule 12(b)(6).